**COMMUNITY FIRST BANK, Independent Bank, The Ionia County National Bank of Ionia and Union Bank, Plaintiffs,**

v.

**The NATIONAL CREDIT UNION ADMINISTRATION and Portland Federal Credit Union, Defendants.**

No. 5:93–cv–59.

United States District Court,
W.D. Michigan, S.D.

Aug. 25, 1993.

Robert J. Jonker and Dennis John Donohue, Warner, Norcross & Judd, Grand Rapids, MI, for plaintiffs, Community First Bank, Independent Bank, The Ionia County Nat. Bank of Ionia and Union Bank.

John A. Smietanka, U.S. Atty., Thomas J. Gezon, Acting U.S. Atty., Michael L. Schipper, Asst. U.S. Atty., Grand Rapids, MI; Steven W. Widerman, Nat. Credit Union Admin., Office of Gen. Counsel; Kenneth L. Doroshow, Anne L. Wiesmann, U.S. Dept. of Justice, Civ. Div., Washington, DC; and Nicholas Veghts, Nat. Credit Union Ass'n, Region IV, Lisle, IL, for defendant, Nat. Credit Union Admin.

Grant J. Gruel, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, for defendant, Portland Federal Credit Union.

John J. Gill and Michael F. Crotty, American Bankers Ass'n, Washington, DC, for amicus, American Bankers Ass'n.

Donald C. Heikkinen, Michigan Bankers Ass'n, Lansing, MI, for amicus, Michigan Bankers Ass'n.

Paul J. Lambert, Teresa Burke, and Carolyn M. Landever, Bingham, Dana & Gould, Washington, DC, for amicus, Credit Union Nat. Ass'n and for amicus, Michigan Credit Union League.

Steven L. Owen, Michael W. Puerner, and Mark J. Burzych, Foster, Swift, Collins & Smith, P.C., Lansing, MI, for amicus, Michigan League of Sav. Institutions.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

In this action filed under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the plaintiffs, four banks, challenge a decision of the National Credit Union Administration ("NCUA") approving an application by a federal credit union for amendment of its membership charter.

The matter came before the court on August 17, 1993 for a hearing on motions for summary judgment filed by both the plaintiffs and the defendant. For the reasons which follow, the court hereby **DENIES** the plaintiffs' motion for summary judgment, and **GRANTS** the defendant's motion for summary judgment.

## FACTS

Portland Federal Credit Union ("Portland Federal") is a federal credit union based in the City of Portland, Ionia County, Michigan. As a federally-chartered credit union, Portland Federal is subject to the requirements of the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1751 *et seq.* NCUA is an independent federal agency based in Washington, D.C., and is the governmental body responsible for the regulation of federal credit unions. Among NCUA's duties is the approval of federal credit union charters, including but not limited to the approval of the credit union's proposed field of membership. 12 U.S.C. §§ 1753, 1754.

The plaintiffs in this action are four banks. Plaintiff Community First Bank a federal savings bank based in the City of Lansing, Ingham County, Michigan. Plaintiff Independent Bank is a Michigan banking corporation based in the City of Ionia, Ionia County, Michigan. Plaintiff The Ionia County National Bank of Ionia is a national bank based in the City of Ionia, Ionia County, Michigan. Finally, plaintiff Union Bank is a state-chartered Michigan banking corporation based in the City of Lake Odessa, Ionia County, Michigan. All four plaintiffs allege that they provide financial services to persons in Ionia County, Michigan.

Portland Federal was initially formed in 1947 as an occupational credit union for the employees of the Portland Manufacturing Company in Portland, Michigan. In 1953, Portland Federal amended its charter, converting to a community-based credit union serving persons residing within a six-mile radius of the Portland post office. In 1981, the credit union again amended its charter and expanded its field of membership to include small segments of Clinton County and Eaton County, Michigan as well as a segment of Ionia County, Michigan surrounding Portland.

On August 19, 1992, Portland Federal again applied to NCUA for permission to amend its charter to expand its field of membership to include the remainder of Ionia County and parts of three townships in Clinton County. Responding to objections received from other credit unions operating within the proposed area, Portland Federal later amended its application to reduce the population in the proposed area of expansion by exempting certain persons from membership who were already eligible for membership in other credit unions, by limiting the proposed expansion to within Ionia County only, and by further limiting the proposed expansion to exclude Otisco Township within Ionia County. The Regional Director of NCUA's Region IV office approved Portland Federal's expanded charter, as modified, on March 1, 1993.

The plaintiff banks, who had expressed to NCUA certain objections to Portland Feder-

al's proposed expansion within Ionia County,[1] filed their complaint in this action on May 14, 1993, alleging that the Regional Director's decision approving the expansion does not satisfy certain statutory and regulatory criteria imposing limits on membership in community-based credit unions.[2] They seek a ruling invalidating both the Regional Director's decision and Portland Federal's amended charter.

## ANALYSIS

Both the plaintiffs and NCUA have moved for summary judgment. In their motion, the plaintiffs basically argue that NCUA's approval of Portland Federal's amended charter must be invalidated because (1) the Regional Director did not adequately explain the basis for his decision approving the expansion, and (2) the only evidence before the agency demonstrated that Portland Federal's expanded field of membership did not satisfy the community common bond requirement. In its motion, NCUA argues that its decision that Ionia County represents a community for field of membership purposes is amply supported by the record and must be upheld.

■ This is an action seeking review of an administrative decision. Agency decisions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Communities, Inc. v. Busey,* 956 F.2d 619, 623 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 332 (1992). "While a court reviewing agency determinations should not be a rubber stamp, the arbitrary and capricious standard is deferential toward agency decisions." *Goldin v. FDIC,* 985 F.2d 261, 263 (6th Cir.1993) (cit-

ing *Air Pollution Control District v. Environmental Protection Agency,* 739 F.2d 1071, 1083 (6th Cir.1984)). This court must uphold the agency's action if there is a rational basis for the action. *Air Pollution Control District,* 739 F.2d at 1083. In determining whether the decision made survives review under the arbitrary and capricious standard, the court

> must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. [Citations omitted.] Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute is judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). In applying the standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida*

---

1. The plaintiffs made a lengthy submission to NCUA, consisting of a series of documents which they contended demonstrated the absence of a community common bond.

2. Plaintiffs originally named as defendants both NCUA and Portland Federal. However, on June 25, 1993, the court dismissed Portland Federal as a defendant based on the plaintiffs' failure to state a viable claim against the credit union. Plaintiffs filed a motion for entry of preliminary injunction on June 7, 1993, seeking to prohibit Portland Federal from soliciting new members within the approved expansion area during the pendency of this action. Plaintiffs subse-

quently abandoned this motion upon being advised that the court intended to review the merits of the case on an expedited basis.

Several entities have been granted leave to appear as amicus curiae during the course of this proceeding. In connection with the present motions, the court acknowledges having received briefs from the following: (1) The American Bankers Association and Michigan Bankers Association; (2) The Michigan League of Savings Institutions; and (3) The Credit Union National Association, Inc. and Michigan Credit Union League.

*Power v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985).

Because both parties have moved for summary judgment, and because the court's task is limited to reviewing the Regional Director's decision based on the evidence which was before the agency at the time of the decision, there can be little doubt that this case is not in need of factual development which would prevent the entry of summary judgment. Accordingly, the court will proceed directly to the merits.

The Federal Credit Union Act limits membership in federal credit unions

> to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community, or rural district.

12 U.S.C. § 1759. The Act provides no further definition of these limits, thus leaving their interpretation to NCUA.

■ NCUA's interpretation of the common bond limits contained in 12 U.S.C. § 1759 is set forth in agency's "Interpretative Ruling and Policy Statement 89–1: Chartering and Field of Membership Policy" ("IRPS 89–1"), 54 Fed.Reg. 31168 (July 27, 1989).[3] NCUA's chartering policies as expressed in IRPS 89–1 are directed toward achieving three goals:

> A. To uphold the provisions of the Federal Credit Union Act concerning granting Federal charters;

---

**3.** IRPS 89–1 is incorporated by reference into the Code of Federal Regulations at 12 C.F.R. § 701.1.

**4.** These goals are mutually supportive. As the court observed in *First Nat'l Bank & Trust Co. v. Nat'l Credit Union Administration,* 988 F.2d 1272, 1275–76 (D.C.Cir.1993), Congress' general purpose in passing the Federal Credit Union Act in 1934

> ... was to encourage the proliferation of credit unions, which were expected to provide service to those would-be customers that banks disdained.... The common bond requirement, an existing characteristic of state credit unions, was designed, in combination with the restriction that permitted credit unions to loan only to members, to ensure that credit unions would effectively meet members' borrowing needs. It would seem, therefore, that Congress assumed implicitly that a common bond amongst members would ensure both that

> B. To promote credit union safety and soundness; and

> C. To make quality credit union service available to all eligible groups who wish to have it.

*Id.,* 54 Fed.Reg. at 31168.[4] Consistent with these goals, NCUA has further stated that it may grant a federal credit union charter to any group where it finds:

> —The group possesses a recognizable and appropriate common bond;
> —The subscribers are of good character and are fit to represent the group; and
> —Establishment of the credit union is economically advisable—i.e., it will be a viable institution and its chartering will not materially affect the interests of other credit unions or the credit union system.

54 Fed.Reg. 31168.[5] Although IRPS 89–1 provides that "[g]enerally, these are the only criteria NCUA will look to," *id.,* the interpretative regulations provide the following additional guidance:

> Congress has required that a credit union charter that will be based on a tie to a specific geographic location be limited to 'a well defined neighborhood, community, or rural district.' NCUA policy is to limit the community to a single, compact well-defined area where residents commingle and interact regularly. NCUA recognizes two types of affinity on which a community charter bond can be based: residence and employment. Businesses and other legal

---

> those making lending decisions would know more about applicants and that borrowers would be more reluctant to default. That is surely why it was thought that credit unions, unlike banks, could 'loan on character.' ... The common bond was seen as the cement that united credit union members in a cooperative venture, and was, therefore, thought important to credit unions' continued success.

(Citations and footnote omitted).

**5.** *See also* 12 U.S.C. § 1754, which provides in pertinent part as follows:

> Before any organization certificate is approved, an appropriate investigation shall be made for the purpose of determining: (1) whether the organization certificate conforms to the provisions of this chapter; (2) the general character and fitness of the subscribers thereto; and (3) the economic advisability of establishing the proposed Federal credit union.

entities within the community boundaries may also qualify for membership. Given the diversity of community characteristics throughout the country and NCUA's goal of making credit union service available to all eligible groups who wish to have it, NCUA has established the following bond requirements:

    a. The geographic areas's boundaries must be clearly defined; and

    b. The charter applicant must establish that the area is recognized by those who live and work there as a distinct 'neighborhood, community, or rural district.'

54 Fed.Reg. at 31170. IRPS 89-1 further provides that

If the community is also a recognized legal entity, it may also be included in the field of membership—e.g., 'DEF Township.'

Some examples of community common bond definitions are:

    a. Persons who live or work in ABC County, Maine.

*Id.* Finally, regarding expansions specifically, IRPS 89-1 provides as follows:

Community charter policy stipulates that there be regular contact among persons who live or work within a well-defined neighborhood, community or rural district in order to satisfy the common bond requirements of the Federal Credit Union Act. The burden of proof for existence of the common bond is placed upon the applicant credit union.

*Id.* at 31177. This court, which sits in review of NCUA's decision, must show great deference to the interpretation of a statute by the agency charged with its administration. *Air Pollution Control District,* 739 F.2d at 1083.

■ In this action, plaintiffs have given short shrift to the issue of whether the approved expansion comports with IRPS 89-1's first stated requirement—that the "geographic areas's boundaries must be clearly defined." [6] Although this argument is articulated nowhere in plaintiffs' briefs filed in connection with the present motions, plaintiffs argued for the first time at the hearing held on the motions that the amended charter approved by NCUA contains certain "ill-defined" areas. The certificate of approval issued by the NCUA contains the following amended charter description of the field of membership:

Persons who reside or work within Ionia County, Michigan, or that portion of Clinton County, Michigan, bounded by the Ionia County line on the west, Route M–21 on the north, Grange Road on the east, and the Eaton County line on the south, or the towns or villages of Eagle, Westphalia, or Pewano, or that portion of Eaton County, Michigan, bounded by the Ionia County and Clinton County lines on the north, Grange Road on the east, Route M–43 on the south and Route M–66 on the west, except for persons in Otisco Township, Ionia County, Michigan, or persons eligible for primary membership as of March 1, 1993, in an occupational credit union maintaining its principal office in the above described area[.]

Administrative Record (hereinafter "AR"), Vol. III, Tab 46 at 1509. Little more need be said but that these boundaries are, without question, quite clearly defined. Even if the plaintiffs had raised this particular objection before the agency, the agency could rationally have concluded that this requirement was satisfied.

The plaintiffs instead focus their arguments on the second requirement set forth in IRPS 89-1—that the area must be viewed by those who live and work there as a distinct community or rural district. In this respect, the plaintiffs contend (1) that NCUA did not adequately explain the basis for its decision, and (2) that the only evidence before the agency demonstrated that Portland Federal's expanded field of membership did not satisfy the community common bond requirement. The court will address each of these arguments in turn.

■ As for the plaintiffs' first contention—that the administrative record does not include any explanation or justification of

---

**6.** Indeed, this argument appears to be little more than an afterthought. In stating their opposition to Portland Federal's proposed expansion before NCUA, the plaintiff banks argued only that the expansion was improper because (1) the community of Portland was separate from and independent of other Ionia County communities, and (2) the residents of Ionia County already had credit union service available to them from other local credit unions.

NCUA's decision—a review of the record reveals that this simply is not true. NCUA's decision is contained in the "Regional Summary, Community Charter Expansion" ("Regional Summary"), AR, Vol. III at 1512–1514. In the Regional Summary, the Regional Director makes the following statements addressing the community common bond requirement and various comments which it had received from interested parties during the decisionmaking process:

> ... The [Governmental Employees Credit Union of Ionia State Credit Union, or "GECU"] also opposes the expansion by Portland FCU and would exclude people in the City of Ionia, Easton Township, Berlin and Ionia Townships as well as those in groups in its field of membership. The [GECU] indicates that it can make credit union services available to all persons in Ionia County and believe that they serve a unique community with an 'uncommon bond.'[7] ...

\*  \*  \*  \*  \*  \*

> ... Another comment [by the banks] is that the proposed expansion does not represent a single community but rather includes various areas in different commercial or political districts. The materials provided [by the banks] indicate that Ionia County is part of various political districts with no separate identity. For example, along with Kent County and a portion of Barry County, Ionia County is part of Michigan's 3rd congressional district, while Ionia, Barry, Montcalm, Mecosta, and Isabella counties form the state's 23rd senatorial district. For Michigan House of Representatives purposes, Ionia County is divided with the eastern portion (which includes Ionia Township/City and Portland City) joining a portion of Clinton County to form the 86th district, and the western portion joining Barry County to form the 87th district. The county can be divided or combined with other political or commercial areas in any number of ways. It can also be identified as a separate entity.

> ... Other material shows that Ionia County has more than one telephone area code and is served by several out of county

television stations which themselves target various marketing areas within transmission range. The residents have a choice of market areas to patronize.

\*  \*  \*  \*  \*  \*

> Section 109 of the FCU Act provides that community groups be 'within a well defined neighborhood, community, or rural district.' The expansion proposal provides well defined boundaries for the community service area. Portland FCU's revised proposal adds the remainder of Ionia County (with the exception of Otisco Twp., which is within the community service area of Preferred FCU) to its field of membership. Ionia County represents a community for field of membership purposes.

While even NCUA concedes that this decision is not a model of clarity, the Regional Summary does explain the basis for the agency's decision as well as attempt to address some of the comments made and evidence submitted in opposition to the requested expansion. Although the explanation provided by the Regional Director may not be as detailed as the plaintiffs would have liked, this case involves a review of informal agency action, not a formal agency proceeding. NCUA was not required to issue detailed findings attempting to refute each item of evidence which may have been before the agency. *See Camp v. Pitts,* 411 U.S. 138, 140, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1975) ("[N]either the statute nor the APA requires the [agency] to hold a hearing or to make formal findings...."). As stated by the court in *State Bank of Coloma v. Smith,* 404 F.Supp. 1306 (W.D.Mich.1977):

> [I]n the present case there was contemporaneous explanation of the agency decision. The explanation may have been curt, but it surely indicated the determinative reason for the final action taken: the finding that a new bank was an uneconomic venture in light of the banking needs and the banking services already available in the surrounding community. The validity of the Comptroller's action must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not

---

7. The GECU joined in the plaintiff banks' comments and submissions to the agency, but has not been joined as a party in this action.

sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration.

*Id.* at 1309.[8] Similarly, the court concludes in this case that NCUA's explanation for its decision is sufficient for purposes of review.

The plaintiffs argue that the only evidence before the agency showed that the community common bond requirement was not satisfied by the approved expansion, which allows Portland Federal to solicit new members for the credit union within a large portion of Ionia County. In contrast, NCUA argues that based on the evidence on the record, its Regional Director was able to conclude that the small population in the contiguous locations within the proposed area viewed itself as a distinct community.

NCUA's determination that the expansion area is a distinct community does find support in the administrative record. For example, Portland Federal submitted an analysis prepared by a marketing consultant who observed that the City of Ionia is the county seat, and a primary economic center of the county. AR, Vol. I, Tab 4 at 80. The analysis also observed that "[m]any people, including Portland Federal's members regularly travel there to conduct business." *Id.* Portland Federal also submitted the results of a survey.[9] NCUA points out that a number of persons who were asked about the proposed expansion referred to the benefits of "more service to the Co. [presumably Ionia County]" AR, Vol. I, Tab 4 at 216; the benefits of being "central[ly] located," *id.* at 269; and the benefits of having an office in the "county

seat." *Id.* at 279. However, what is most compelling about some of the survey responses is that they strongly suggest interaction between Portland and Ionia—a particularly relevant consideration in view of IRPS 89–1's statement that a community shall be limited to a "single, compact, well-defined area where residents commingle and interact regularly." 54 Fed.Reg. at 31170. For example, survey respondents indicated that they favored Portland Federal's expansion because:

"I live half way between Portland and Ionia."

AR, Tab 10 at 195.

[from a Lyons, Michigan resident:] "Although Portland is a stop for my husband on his way to work, he really doesn't like to take the time some days. Ionia is a *little* closer for us and with our kids in school in Ionia we make a lot of trips there. I do think for us it would be more convenient to go to Ionia."

*Id.* at 205.

"I live in the City of Ionia, and work in Portland[.] This would help greatly."

*Id.* at 238.

[from a Lyons, Michigan resident:] "A branch in Ionia would be helpful to us as we travel in that direction every week."

*Id.* at 243.

"I work in Portland, but live in Ionia. So it would be a good convenance [sic] for me."

*Id.* at 248.

"I live in Ionia but work in Portland. I would do more banking at credit union if

---

8. The plaintiffs have expended a significant amount of effort arguing that NCUA's decision must be invalidated simply because the agency did not sufficiently explain its reasons for rejecting every scrap of evidence contrary to its decision. *See Alltel Corp. v. FCC,* 838 F.2d 551, 558 (D.C.Cir.1988) ("the Commission must do more than simply ignore comments that challenge its assumptions"). However, the court finds it inappropriate to compare this case with other cases in which an agency is performing a far different function such as ratemaking or rulemaking, where an agency must choose a particular figure or standard and provide reasons why its particular choice was made over other possibilities. In this case, NCUA's task was not to make a regulatory choice from a continuum of possibilities, but to evaluate Portland Federal's request in order to determine whether the geographic area selected

comported with the community common bond requirement or did not comport with it. Moreover, the administrative record in this case, which contains a large number of duplicative records, is not so lengthy as to preclude a detailed examination for purposes of determining whether the decision is sustainable based thereon.

9. This survey asked respondents to indicate whether they would favor the expansion of the credit union membership to include Ionia County, and whether Portland Federal's service would be improved by the proposed expansion. Respondents were also invited to make comments, and large numbers of persons did express their pleasure with the prospect for a new location.

located in Ionia. This would be more convenient for me."

*Id.* at 261.

"Having a credit union in Ionia would benefit myself and most likely other people who work in Ionia and live in Portland."

*Id.* at 275.

[from a Muir, Michigan resident:] "I do most of my business in Ionia since I live near there (I work in Portland). My son also attends school in Ionia so I'm there *a lot.* I would benefit greatly by your expansion."

*Id.* at 323.

Based upon these responses alone, it would be rational for NCUA to conclude that there is regular interaction between these two areas of Ionia County (the Cities of Ionia and Portland), if for no other reason than that some persons live in one area and work in the other.[10]

Another item of supportive evidence submitted by Portland Federal is completely ignored by the plaintiffs. Portland Federal submitted data showing the market segmentation of Ionia County.[11] AR, Vol. I, Tab 4 at 126. This data showed that a group de-

scribed as the "Family Centered Blue Collar Group" is represented by approximately 50 percent of the population and households in Ionia County. *Id.* at 128.[12] The data also showed that another group described as "Old Families in Pre–War Homes" is represented by approximately 18 percent of the population and 20 percent of the households in Ionia County. *Id.*[13] In sum, this data showed that large numbers of residents in Ionia County share common characteristics.[14]

Even if this showing of regular interaction between residents in different segments of the county, together with the sharing of certain common characteristics, were not sufficient to support the Regional Director's decision, the record contains additional support for NCUA's determination that Portland Federal's expansion satisfied the community common bond requirement. Ironically, this evidence was submitted to NCUA by the plaintiff banks themselves. The plaintiffs submitted selected portions of the results of a survey of Ionia County residents conducted through Michigan State University and sponsored by the Ionia County Board of Commissioners. The survey asked respondents their opinions on a variety of issues pertinent to

---

10. The plaintiffs attack the survey responses, basically arguing that the record establishes neither the survey's scientific validity nor that its purpose was to substantiate the common bond requirement. This argument is curious, for the plaintiffs themselves submitted survey evidence to NCUA which suffers from these same apparent faults. However, in an informal agency proceeding, the evidence submitted is not subjected to the requirements of the Rules of Evidence or even the rigors of cross-examination. The court's purpose in reviewing the agency's decision is not to allow the parties to re-argue the merits of their evidentiary submissions or the weight which should be attached to them.

11. "Market segmentation" apparently refers to a type of data generated based on the premise that people who share similar demographic, socioeconomic, and housing characteristics tend to live in similar neighborhoods and exhibit similar purchasing habits.

12. The "Family Centered Blue Collar Group" is described as "possessing a high proportion of young families with teenagers, with children between 0 and 11 exceeding the national average. Only nine percent have a college degree and seventy-five percent earn less than $25,000 annually." AR, Vol. I, Tab 4 at 128.

13. The "Old Families in Pre–War Homes" group is described as follows: "Nearly 16% of this group is over the age of 65, twenty-six percent greater than the national average. Eleven percent are between 55 and 64 years old. The age distribution in ranges below 55 resembles the U.S. average. This population occupies mostly single-unit housing built prior to 1940. Almost 84% earn less than $25,000 per year. Laborers, service workers and craft/operators dominate the work force." AR, Vol. I, Tab 4 at 128.

14. "Common characteristics" is not a criterion which NCUA indicates it considers in IRPS 89–1 in determining whether a proposed expansion area represents a community or rural district. However, in a proposed, non-final interpretative ruling and policy statement published on July 28, 1993 setting forth suggested updates to IRPS 89–1, NCUA has suggested that the presence of "[c]ommon characteristics and background of residents (income, religious beliefs, primary ethnic groups, similarity of occupations, household types, primary age group, etc.") is an item to be considered. 58 Fed.Reg. 40470 (July 28, 1993). The court has reviewed this new statement by NCUA in greater detail *infra.*

county leadership. One of these questions asked respondents to rate how important the "rural, small-town atmosphere" was to them to continue living in the area. An overwhelming majority of respondents residing in the City of Portland—59 percent—indicated that the "rural, small-town atmosphere" was "very important." AR, Vol. III, Tab 44 at 1393. Similarly, a majority of respondents residing in the City of Ionia—39 percent—indicated that the "rural, small-town atmosphere" of the area was "very important." *Id.* at 1439.[15] These results support a conclusion that residents of these two different areas of Ionia County view themselves as being part of a community which can be defined as rural, Michigan county.

Even if it were not self-evident that the residents of a rural county can reasonably qualify as a "community," IRPS 89-1 lists a fictional "ABC County, Maine" as an example of a community which satisfies the common bond definition. 54 Fed.Reg. 31170. The Regional Director's decision that Ionia County, Michigan—which fits this regulatory example—likewise satisfies the community common bond definition is therefore entirely rational.[16]

█ A final matter which the plaintiffs contend impacts upon the Regional Director's decision is NCUA's very recent publication of as yet unadopted proposed amendments to IRPS 89-1. 58 Fed.Reg. 40470 *et seq.* (July 28, 1993).[17] One of the stated purposes of these amendments is "[c]larification and amplification of the process for requesting additions to a federal credit union's field of membership." *Id.* at 40471. The amendments contain an appendix, Appendix G, which sets out in far greater detail the type of information needed to support an application for a community charter (and presumably also to support an application for an amended community charter). *Id.* at 40534. This includes information on political jurisdictions; major trade areas (shopping patterns); traffic flows; shared/common facilities (educational, medical, police and fire protection, etc.); organizations/clubs whose membership is made up exclusively of persons within the area; newspapers or other periodicals published for and within the area; census tracts; common characteristics and background of residents (income, religious beliefs, primary ethnic groups, similarity of occupations, household types, primary age group); history of the area; and "[i]n general, what causes the chosen area and its residents to be separate and apart from the immediate surrounding areas and residents—some examples are old, well established ethnic neighborhoods, planned communities and small/rural towns." *Id.* The plaintiffs argue that the information listed in NCUA's recent publication "parallels" their

15. Only three percent of respondents residing in the City of Portland rated the "rural, small-town atmosphere" of the area as "not important" in terms of their continuing to live in Ionia County. AR, Vol. III, Tab 44 at 1393. A similarly small percentage of respondents residing in the City of Ionia rated this factor as "not important." *Id.* at 1439.

16. The plaintiffs point out that the amended charter description approved for Portland Federal by NCUA includes more than just Ionia County, Michigan; it includes small portions of two other counties—Clinton and Eaton—and does not even include all of Ionia County. (Otisco Township, which is located in Ionia County, has been excluded.) Therefore, plaintiffs argue, even assuming that the regulatory example is entitled to weight, the approved area does not precisely fit this paradigm of "ABC County."

The court notes that the expansion which was approved for Portland Federal by NCUA on March 1, 1993 was entirely within Ionia County. The plaintiffs' stated basis before NCUA for their opposition to the credit union's expansion was that the residents of the City of Portland did not share a common bond with other Ionia County residents. The plaintiffs submitted no evidence suggesting why the portions of Clinton and Eaton County which were already included within Portland Federal's area of service were inappropriate for inclusion within the expanded service area, and they can hardly fault the agency for failing to consider an argument which they simply never raised. While Portland Federal's field of membership as amended must satisfy the FCUA's common bond requirement, there was evidence in the record suggesting that Portland Federal's previous service area and proposed, expanded service area were similar in character, thus further suggesting that the expansion sought was a logical extension of the credit union's field of service.

17. NCUA issued its certificate of approval of Portland Federal's amended field of membership on March 1, 1993, well before this recent publication. AR, Vol. III, Tab 46.

own evidentiary submissions, thus underscoring the "impropriety" of NCUA's decision in this case.[18]

This court's review is limited to the record before the agency at the time the decision was made on March 1, 1993. While the plaintiffs apparently acted with unusual foresight in making submissions which closely follow those factors to which NCUA has suggested it will give consideration in future common bond decisions, the court cannot fault NCUA at this juncture for failing to require Portland Federal to gear its own submissions toward compliance with a non-final interpretative ruling which had not, as of that time, even been published. NCUA's July, 1993 publication, while undoubtedly clarifying in nature, is far more detailed than IRPS 89–1 in terms of stating the types of information which the agency expects applicants for community charters to provide. The agency cannot be faulted for failing to evaluate Portland Federal's application materials following an analytical framework which was not even officially in existence at the time the decision was made.

The requirement stated in IRPS 89–1 which lies at the heart of this case—that the charter applicant establish that an area is "recognized" by residents and workers as a "distinct 'neighborhood, community, or rural district' "—seems particularly subjective. However, the concept of what makes a "community," embodied in the FCUA, is itself a subjective, fluid, and vague concept. It may be defined any number of ways, including by location. It may also be defined by the homogeneity of its residents, although under the FCUA, it need not be. The task of defining what constitutes a "community" for FCUA purposes has been left to NCUA, which in this case has reasonably relied upon objective evidence to reach its conclusion that the area to be served by Portland Federal qualifies as a community. While the Regional Director could have reached a different conclusion, the fact remains that he did have a rational basis in the record for his determination, insofar as the record establishes that the approved area is a single, compact rural area in which residents and workers interact regularly.

## ORDER

Accordingly, the reasons stated, the court hereby **DENIES** plaintiffs' motion for summary judgment and **GRANTS** NCUA's motion for summary judgment. This action is therefore **DISMISSED** with prejudice.

So ordered.

18. The evidence which the plaintiffs submitted to NCUA included the following: (1) Maps showing that the proposed expansion area spanned the boundaries of three Congressional districts, three separate state Senatorial districts, and three separate state House districts; (2) maps showing that the cities of Portland and Ionia are in separate county commission districts; (3) affidavits which the plaintiffs contend demonstrate the lack of "meaningful commercial interaction" between the cities of Portland and Ionia; (4) a check clearing study which concludes that Portland residents do not shop in Ionia "to any significant extent" and that Portland residents "probably travel to the Lansing area" when they want to shop elsewhere; (5) evidence showing that the cities of Ionia and Portland have different telephone directories and area codes; (6) evidence showing that Portland and Ionia each have their own local newspapers; (7) evidence showing no "direct" road link between Portland and Ionia; (8) evidence showing that Portland and Ionia residents do not worship in the same churches or send their children to the same schools; and (9) evidence purportedly showing the existence of separate civic and charitable infrastructures for Portland and Ionia. The plaintiffs also submitted the portions of the results of the Michigan State University study sponsored by the Ionia County Board of Commissioners, which showed that county residents harbored different opinions on a variety of topics and differed in terms of where they most frequently shop, seek medical services, send their children to school, etc. AR, Vol. III, Tab 44. The plaintiffs conclusorily argue that these materials demonstrated that the persons living in the proposed field of membership did not form a "well-defined neighborhood, community or rural district." The Regional Director's decision indicates that he took cognizance of plaintiffs' evidence and rejected it; he did not ignore it, as the plaintiffs contend. The court concludes that NCUA's rejection of this evidence as nonconclusive is rational.